UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

| | |
|---|---|
| KRISTI M. HAGGARD, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 3:17-CV-99-DCP |
| | ) |
| NANCY A. BERRYHILL,[1] | ) |
| Deputy Commissioner for Operations, | ) |
| performing the duties and functions not | ) |
| reserved to the Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 73 of the Federal Rules of Civil Procedure, and the consent of the parties [Doc. 13]. Now before the Court is Plaintiff's Motion for Summary Judgment and Memorandum in Support [Docs. 16 & 17], Defendant's Motion for Summary Judgment and Memorandum in Support [Docs. 18 & 19], and Plaintiff's Reply Brief [Doc. 20]. Kristi M. Haggard ("Plaintiff") seeks judicial review of the decision of the Administrative Law Judge ("the ALJ"), the final decision of Defendant Nancy A. Berryhill, Acting Commissioner of Social Security ("the Commissioner"). For the reasons that follow, the Court will **DENY** Plaintiff's motion and **GRANT** the Commissioner's motion.

I. **PROCEDURAL HISTORY**

On April 17, 2013, Plaintiff filed an application for disability insurance benefits pursuant to Title II of the Social Security Act, 42 U.S.C. § 401 *et seq.*, claiming a period of disability that

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), the Court hereby substitutes Nancy A. Berryhill, Deputy Commissioner for Operations, performing the duties and functions not reserved to the Commissioner of Social Security, as the Defendant in this case.

began on December 1, 2012. [Tr. 180, 204]. After her application was denied initially and upon reconsideration, Plaintiff requested a hearing before an ALJ. [Tr. 106]. A hearing was held on June 16, 2015. [Tr. 48-65]. The ALJ left the record open and obtained interrogatory responses from a medical expert, and Plaintiff submitted additional medical evidence as well. The ALJ then held a supplemental hearing on December 9, 2015. [Tr. 29-47]. On February 1, 2016, the ALJ found that Plaintiff was not disabled. [Tr. 14-23]. The Appeals Council denied Plaintiff's request for review [Tr. 1-3], making the ALJ's decision the final decision of the Commissioner.

Having exhausted her administrative remedies, Plaintiff filed a Complaint with this Court on March 20, 2017, seeking judicial review of the Commissioner's final decision under Section 405(g) of the Social Security Act. [Doc. 1]. The parties have filed competing dispositive motions, and this matter is now ripe for adjudication.

## II. ALJ FINDINGS

The ALJ made the following findings:

> 1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2015.
>
> 2. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of December 1, 2012 through her date last insured of December 31, 2015 (20 CFR 404.1571 *et seq*.).
>
> 3. Through the date last insured, the claimant has the following severe impairments: degenerative disc disease, migraine headaches, history of colitis, post-traumatic stress disorder (PTSD), depression (20 CFR 404.1520(c)).
>
> 4. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except that at any one time she is limited to 4 hours of sitting, 3 hours of standing, and 3 hours of walking; in an 8-hour day she could sit up to 8 hours and stand and walk a combination of 6 hours; no climbing ladders, ropes, or scaffolds; no more than occasional climbing stairs and ramps, balancing, stooping, bending from the waist to the floor, kneeling, crouching, or crawling; no work around hazards such as dangerous moving machinery and unprotected heights; limited to performing simple, repetitive non-detailed tasks with coworker and public contact no more than occasional, casual, and superficial where supervision is direct and non-confrontational that is she would not require any special supervision and changes in the workplace should be infrequent and gradually introduced.

6. Through the date last insured, the claimant is unable to perform any past relevant work. (20 CFR 404.1565).

7. The claimant was born on September 21, 1970 and was 45 years old, which is defined as a younger individual age 18-49, on the date last insured (20 CFR 404.1563).

8. The claimant has at least a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569(a)).

11. The claimant was not under a disability, as defined in the Social Security Act, at any time from December 1, 2012, the alleged onset date, through December 31, 2015, the date last insured (20 CFR 404.1520(g)).

[Tr. 16-23].

## III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining whether the ALJ's decision was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings promulgated by the Commissioner, and whether the ALJ's findings are supported by substantial evidence. *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009) (citation omitted); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).

Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994) (citations omitted). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. *Crisp v. Sec'y of Health & Human Servs.*, 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001) (quoting *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case *de novo*, nor resolve conflicts in the evidence, nor decide questions of credibility." *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984) (citation omitted).

On review, the plaintiff "bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y. of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994) (citation omitted).

## IV.    DISABILITY ELIGIBILITY

"Disability" is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant will only be considered disabled if:

> his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

Disability is evaluated pursuant to a five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity ("RFC") and vocational factors (age, education, skills, etc.), he is not disabled.

*Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520). A claimant's residual functional capacity ("RFC") is assessed between steps three and four and is

5

"based on all the relevant medical and other evidence in your case record." 20 C.F.R. §§ 404.1520(a)(4), -(e), 416.920(a)(4), -(e). An RFC is the most a claimant can do despite his limitations. §§ 404.1545(a)(1), 416.945(a)(1).

The claimant bears the burden of proof at the first four steps. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at step five. *Id.* At the fifth step, the Commissioner must prove that there is work available in the national economy that the claimant could perform. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999) (citing *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987)).

## V. ANALYSIS

Plaintiff contends that the ALJ's RFC determination is not supported by substantial evidence in two regards. First, Plaintiff submits that the ALJ erroneously relied on the interrogatory responses and opinion provided by medical expert Eric Puestow, M.D. [Doc. 17 at 19-22]. Second, Plaintiff maintains that her RFC does not properly reflect the limitations assessed by consultative examiner Candace Blake, Psy.D., despite the ALJ's assignment of great weight to Dr. Blake's opinion. [*Id.* at 23-24].

Opinions from non-treating, examining and non-examining medical and psychological consultants are evaluated using the regulatory balancing factors set forth in 20 C.F.R. § 404.1527(c)(1)-(6). Specifically, "[t]he Commissioner [] weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (citing 20 C.F.R. § 404.1527(c)). "Other factors 'which tend to support or contradict the opinion' may be considered in assessing any type of medical opinion." *Id.* (quoting 20 C.F.R. § 404.1527(c)(6)).

6

The Court will address Plaintiff's specific allegations of error in turn.

A.      **Interrogatory Responses and Opinion of Medical Expert Eric Puestow, M.D.**

Plaintiff avers that the ALJ's reliance on Dr. Puestow's interrogatory responses and accompanied medical source statement was improper because the ALJ did not rule on the specific objections by Plaintiff's counsel during the supplemental administrative hearing, and the ALJ did not properly weigh the regulatory balancing factors in assessing Dr. Puestow's opinion.

Following the first administrative hearing, ALJ sent medical interrogatories and a medical source statement to Dr. Puestow in order to obtain additional evidence of Plaintiff's physical impairments. [Tr. 629-37]. The ALJ proffered Dr. Puestow's responses and medical source statement to Plaintiff on July 24, 2015, as a proposed exhibit to the record. [Tr. 277-78]. At the supplement hearing held on December 9, 2015, Plaintiff's counsel argued that Dr. Puestow's opinion should be given little weight because his interrogatory responses were nonresponsive to the questions asked, he failed to cite to any particular evidence to support his findings, and it was unclear what evidence was sent for his review. [Tr. 46]. Plaintiff renews these objections before the Court and submits that they were never properly addressed or ruled upon by the ALJ. [Doc. 17 at 20-21].

In the interrogatory responses, Dr. Puestow stated that he reviewed the evidence furnished to him by the agency which was sufficient for him to form a medical opinion about the nature and severity of Plaintiff's impairments. [Tr. 629]. He then specified that Plaintiff's impairments included: (1) lumbar degenerative disc disease, (2) chronic headache disorder with normal exam and imaging studies, (3) hypertension with no end organ damage-not severe, and (4) chronic use of prescribed narcotics and sedatives [*Id.*]. Dr. Puestow concluded that none of Plaintiff's impairments met or equaled an impairment in the Listing of Impairments. [Tr. 630]. While the

interrogatories requested that Dr. Puestow cite with specificity to the objective medical evidence that supported his conclusions, Dr. Puestow did not identify any specific evidence or medical records and stated, "None close," in response to why Plaintiff's impairments did not meet a listing. [Tr. 629-30].

Dr. Puestow then completed a medical source statement, wherein he opined that Plaintiff had the following functional limitations in an eight-hour workday: Plaintiff could lift and carry up to 10 pounds frequently and 11 to 20 pounds occasionally; she could stand and walk for three hours at a time but four hours total, and she can sit for four hours at a time but eight hours total; she could never climb ladders, ropes, or scaffolds, but she could occasionally perform all other postural activities; and she would need to avoid all exposure to unprotected heights, but she could tolerate occasional exposure to moving mechanical parts and could occasionally operate a motor vehicle. [Tr. 632-36].

Plaintiff complains [Doc. 17 at 20-21] that the ALJ's reliance on Dr. Puestow's opinion was error because the ALJ did not rule on the objections raised by counsel during the supplemental hearing, and therefore, the ALJ failed to comply with Hearing, Appeals, and Litigation Law Manual ("HALLEX"),[2] I-2-5-44-1, 1994 WL 637377 (April 1, 2016), which states, "An ALJ must rule on any objection or request by the claimant regarding the [medical expert's] response to

---

[2] The HALLEX manual "provides 'guiding principles, procedural guidance and information' to adjudicators and staff of the Office of Hearings and Appeals." *Bowie v. Comm'r of Soc. Sec.*, 539 F.3d 395, 397 (6th Cir. 2008) (quoting HALLEX I–1–0–1, 2005 WL 1863821, at *1 (June 21, 2005)). The guidelines provided therein, however, are not binding on the courts. *Id.* at 399. Moreover, and contrary to Plaintiff's assertion that her procedural due process rights were violated by the ALJ's failure to comply with the guidance set forth in the HALLEX [Doc. 20 at 2], "HALLEX guidelines do not create procedural due process rights." *Beason v. Comm'r of Soc. Sec.*, No. 1:13-CV-192, 2014 WL 4063380, at *9 (E.D. Tenn. Aug. 15, 2014) (citing *Lawrence v. Colvin*, No. 3:13–032–DCR, 2014 WL 640990, at *4 (E.D. Ky. Feb.18, 2014)).

interrogatories" either "on the record during the hearing or in a writing that the ALJ exhibits and associates with the record."

The Court observes that the objections raised at the supplemental hearing were arguments raised by Plaintiff's counsel as to reasons why Dr. Puestow's opinion was entitled to "little weight." [Tr. 46]. Counsel did not object to the admissibility of the opinion. [Tr. 32-33]. While the ALJ did not respond to counsel's argument at the hearing, nor did he recount counsel's arguments in his written decision, the ALJ did address Dr. Puestow's opinion, assigned it "great weight," and concluded that the opinion was consistent with MRIs of Plaintiff's lumbar spine and written treatment notes that indicated medication controlled Plaintiff's back pain. [Tr. 21]. By assigning Dr. Puestow's opinion great weight, the Court finds that the ALJ implicitly overruled counsel's arguments. The issue remains, however, whether substantial evidence supports the ALJ's assignment of great weight to Dr. Puestow's opinion.

Plaintiff contends that Dr. Puestow's failure to identify which evidence he relied upon in making his findings, and the agency's failure to comply with HALLEX I-2-5-44 by not including the correspondence sent to Dr. Puestow with the interrogatories as an exhibit to the record, undermines the supportability of Dr. Puestow's opinion. [Doc. 17 at 20-21]. Candidly, the Court observes that Dr. Puestow's interrogatory responses were riddled with irregularities and agency procedure was not textbook. First, Dr. Puestow did not provide full and complete responses to the interrogatories in that he did not describe what specific evidence or medical records established the existence of Plaintiff's impairments. Dr. Puestow likewise did not cite to the specific evidence he relied upon in concluding that Plaintiff's impairments did not meet or equal a listing. Second, the Court observes that HALLEX I-2-5-44 requires that a copy of the informational letter sent to a medical expert, which accompanies and explains the request for interrogatory responses, is to be

9

included as an exhibit in the E section of the record. 1994 WL 637377 (April 1, 2016). Such letter is absent from the record.

Even so, and in spite of these flaws, the Court finds substantial evidence supports Dr. Puestow's opinion because it is supported by and consistent with the record evidence, including imaging studies, examination findings, diagnostic tests, or the other medical opinions of record. *See* 20 C.F.R. § 404.1527(c)(3)-(4).

At step two of the sequential evaluation, the ALJ determined, in relevant part, that Plaintiff had severe impairments of degenerative disc disease and migraine headaches and a nonsevere impairment of hypertension—ailments in which Dr. Puestow likewise identified as medically determinable impairments. In making his step two finding, the ALJ provided a thorough discussion of Plaintiff's medical records that evidenced imaging studies of degenerative disc disease and examination findings of reduced range of motion of the spine and tenderness in Plaintiff's lower back and hips with range of motion testing. [Tr. 16]. A consultative examination performed by Jeffrey Summers, M.D., revealed similar findings in addition to normal range of motion in all other joints, normal strength, normal grip strength, negative straight leg raise testing, and no problems ambulating. [Tr. 16, 427-28]. As to Plaintiff's migraine headaches, the ALJ noted a history of treatment as well as imaging studies, the most current of which showed a few tiny white matter gliosis presumably related to chronic small vessel change or migraine but no evidence of an acute abnormality. [Tr. 17, 735]. Finally, with regard to Plaintiff's nonsevere hypertension, the ALJ noted that Plaintiff was treated for benign hypertension, which was controlled with treatment. [Tr. 17, 640-55].

At step three, the ALJ considered Listing 1.04, disorders of the spine, but concluded that Plaintiff did not meet the listing because as demonstrated by the MRIs of record, Plaintiff did not

have a nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss, muscle atrophy, and positive straight leg raise testing. [Tr. 18]; *see* 20 C.F.R. Pt. 404, Subpt. P, App. 1, 1.04A (explaining the requisite criteria that must be satisfied to meet or equal the listing). Accordingly, the Court finds that Dr. Puestow's findings regarding Plaintiff's impairments and their severity are consistent with and supported by the medical evidence of record. Significantly, Plaintiff cites to no errors committed at steps two or three, such as that she suffers from additional impairments, that impairments found nonsevere cause more than a minimal effect on her work abilities, or that she meets or equals a listing.

As to Plaintiff's RFC, at which step she argues is more adversely affected by the ALJ's flawed consideration of Dr. Puestow's opinion, the ALJ observed that Plaintiff's medication generally controlled her back pain, and Plaintiff reported no side effects. [Tr. 20, 591]. The ALJ also reiterated Dr. Summers's examination findings which, in addition to those noted above, document an ability to heel walk, toe walk, and perform one-leg stands without difficulty. [Tr. 20, 428]. The ALJ further noted contradictions among Plaintiff's testimony. While Plaintiff testified she did not do any household chores and relied on her husband and children daily, a treatment note recounted that Plaintiff had sustained a rash after pulling weeds from her garden over the weekend. [Tr. 20, 606]. Similarly, Plaintiff testified that her stomach problems caused her to have "accidents" and she had to use the restroom up to 10 times per day, but treatment notes document reported one to two bowel movements per day. [Tr. 20, 642].

As to the opinion evidence of record, Dr. Summers opined Plaintiff would have difficulty performing postural activities and lifting greater than 20 pounds but that she retained the ability to work from a seated position for eight hours in a workday with full and unrestricted use of her upper extremities and could operate hand and foot controls. [Tr. 20, 428]. The non-examining state

agency physicians, at both the initial and reconsideration levels, opined findings consistent with light work. [Tr. 21, 73-74, 90-91]. The ALJ assigned the foregoing opinions "some weight," concluding that Plaintiff was slightly more restricted in that she required the ability to alternate between sitting and standing as she could not perform either for a continuous period of eight hours, and she must avoid work hazards, ladders, ropes and scaffolds. [Tr. 20-21].

As with steps two and three, the Court likewise finds that the functional limitations assessed by Dr. Puestow are consistent with and supported by the medical evidence and opinions of record, and Plaintiff, again, fails to cite to any specific, contrary medical evidence, examining findings, or opinions that contradict the limitations assessed by Dr. Puestow and incorporated into Plaintiff's RFC.[3] Rather, Plaintiff suggests that later generated evidence, including an MRI of Plaintiff's brain and back, submitted after Dr. Puestow rendered his opinion "could" or "may" impact his responses. [Doc. 17 at 22]. Plaintiff's idle hope, without more, is insufficient to find error by the ALJ. *See Kelly v. Comm'r of Soc. Sec.*, 314 F. App'x 827, 831 (6th Cir. 2009) ("[A]bsent a clear showing that the new evidence renders the prior opinion untenable, the mere fact that a gap exists does not warrant the expense and delay of a judicial remand."). "When an ALJ relies on a [medical] source who did not have the opportunity to review later submitted medical evidence," our appellate court "require[s] some indication that the ALJ at least considered these [new] facts before giving greater weight to an opinion that is not based on a review of a complete case record." *Brooks v. Comm'r of Soc. Sec.*, 531 F. App'x 636, 642 (6th Cir. 2013) (internal citations and quotation marks

---

[3] The Court notes that the record does include an "Attending Physician's Statement" completed by Jennifer Strange, FNPBC, wherein Ms. Strange opined that Plaintiff was disabled and unable to work. [Tr. 462]. Opinions that express such conclusions are not considered "medical opinions" and are not offered any special significance as they invade the Commissioner's exclusive role in determining disability. 20 C.F.R. § 404.927(d)(1), -(3).

12

omitted).  Here, the ALJ considered Plaintiff's later submitted imaging studies, as well as other treatment notes submitted after Dr. Puestow rendered her opinion, in assessing the severity and functional effect of Plaintiff's impairments.  [Tr. 17, 20].

Case law is clear that "an agency's violation of its procedural rules will not result in reversible error absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses."  *Wilson*, 378 F.3d at 546–47 (quoting *Connor v. United States Civil Serv. Comm'n*, 721 F.2d 1054, 1056 (6th Cir. 1983)).  The Court concludes that Plaintiff has not carried her burden in this regard.  Accordingly, the Court finds that substantial evidence supports the assignment of great weight to Dr. Puestow's opinion, and Plaintiff's contention to the contrary is without merit.

### B.   Consultative Examiner Candace Blake, Psy.D.

Plaintiff also argues that the ALJ's RFC determination does not accurately reflect the social limitations assessed by Dr. Blake.

Dr. Blake performed a consultative examination on July 13, 2013, wherein she opined that Plaintiff had moderate limitations in her ability to understand and remember, concentrate and persist, and adapt to change, and she had a marked limitation in social interactions.  [Tr. 422].  The ALJ's decision assigned "great weight" to Dr. Blake's opinion.  [Tr. 20].  The ALJ concluded that the opinion was consistent with Plaintiff's mental health treatment records which demonstrated that Plaintiff's medications were effective and that her global assessment of functioning scores were generally at or close to a 60.[4]  [*Id.*].

---

[4] A global assessment of functioning score between 51 and 60 indicates moderate symptoms or moderate difficulty in social or occupational functioning.  Am. Psychiatric Ass'n, *Diagnostic and Statistical Manual of Mental Disorders* 34, 4th ed. (revised) 2000.

13

Plaintiff argues that despite purporting to give great weight to Dr. Blake's opinion, the ALJ's RFC determination does not adequately reflect Dr. Blake's marked limitation in social interactions. [Doc. 17 at 23]. In other words, Plaintiff argues that her RFC, which limits her to (1) occasional, casual, and superficial interaction with coworkers and the public and (2) direct, non-confrontational supervision (*i.e.*, no special supervision), does not convey a marked limitation in social interactions, which would limit her to *less than occasional* interaction with coworkers and supervisors. [*See id.*]. The Court disagrees with Plaintiff's contention and finds that substantial evidence supports the social limitations incorporated into Plaintiff's RFC.

As an initial matter, the Court notes that when an ALJ fails to incorporate all of the limitations opined from a medical source who received great weight, "it does not follow that the ALJ's explanation is, therefore, procedurally inadequate, or that the RFC was not supported by substantial evidence." *Moore v. Comm'r of Soc. Sec.*, No. 1:13-CV-00395, 2013 WL 6283681, at *7 (N.D. Ohio Dec. 4, 2013); *see Purtty v. Comm'r of Soc. Sec. Admin.*, No. 1:13 CV 1204, 2014 WL 3510991, at *9 (N.D. Ohio July 10, 2014) ("[A]n ALJ is not required to explain each limitation or restriction he adopts or, conversely, does not adopt from a consultative examiner's opinion. While an ALJ must consider medical opinions, the RFC determination is expressly reserved to the Commissioner.") (citations omitted); *Newsome v. Astrue*, No. CIV. 11-1141-CJP, 2012 WL 2922717, at *6 (S.D. Ill. July 17, 2012) (rejecting the plaintiff's argument that by giving great weight to a consultative examiner's opinion, the RFC assessment should have perfectly tracked the examiner's opinion).

However, in this case, the Court finds that Plaintiff's RFC did incorporate Dr. Blake's marked limitation in social interactions. Plaintiff summarily concludes that a marked limitation in social interactions means that she could only have less than occasional interaction with coworkers

14

and supervisors. Plaintiff's contention is not supported by case law. *Shinlever v. Berryhill*, No. 3:15-CV-371-CCS, 2017 WL 2937607, at *6 (E.D. Tenn. July 10, 2017) ("Substantial evidence supports a finding that interacting with co-workers and supervisors on an occasional basis—that is, very little up to one-third of the workday, Soc. Sec. Rul. 83-10, 1983 WL 31251, at *5 (Jan. 1, 1983)—and no interaction with the public accommodates the Plaintiff's 'marked' limitation."); *Miller v. Colvin*, No. 3:15-CV-294-DW, 2016 WL 154127, at *8-9 (W.D. Ky. Jan. 12, 2016) (finding an RFC that limited the plaintiff to "no interaction with the general public and only occasional, but superficial, interaction with co-workers and supervisors combined with no close tandem work" properly accounted for the plaintiff's marked limitation in social functioning); *Libertore v. Comm'r of Soc. Sec.*, No. 5:11 CV 1245, 2012 WL 3815622, at *11 (N.D. Ohio July 26, 2012) ("To the contrary, a restriction to jobs without arbitration, confrontation, or negotiation, and further involving only superficial interpersonal interaction with the public or co-workers, is a significant enough limitation to sufficiently accommodate for Claimant's marked social functioning difficulties."), *adopted sub nom.*, *Libertore v. Astrue*, No. 5:11 CV 1245, 2012 WL 3815626 (N.D. Ohio Sept. 4, 2012).

As explained in *Shinlever*, while agency rulings define a "marked limitation" as a "substantial loss of ability," a "'[s]ubstantial loss' cannot be precisely defined" because "[i]t does not necessarily relate to any particular adjective, number, or percentage." 2017 WL 2937607, at *6 (quoting Soc. Sec. Rul. 96-9-p, 1996 WL 374185, at *9 (July 2, 1996); Soc. Sec. Ru. 85-15, 1985 WL 56857, at *4 (Jan. 1, 1985); and Program Operation Manual System DI. 25020.010.A.3. Mental Limitations). Therefore, a marked limitation is not synonymous with a specific functional restriction or RFC. As such, the Court finds that Plaintiff has not demonstrated why an RFC of occasional interaction with coworkers and the public, and direct, non-confrontational supervision,

fails to accommodate Plaintiff's marked limitation in social interactions.

The Court is likewise unpersuaded by Plaintiff's additional argument that the opinion of Plaintiff's treating therapist, Katherine Bentley-Knowles, APN, PMHNP-BC, demonstrates greater limitations in social interactions than incorporated into the RFC [Doc. 23 at 17], as Ms. Bentley-Knowles assessed that Plaintiff was not significantly limited-to-moderately limited in social interactions [Tr. 464].

Accordingly, the Court finds the ALJ properly considered Dr. Blake's opinion, and substantial evidence supports the social interaction limitations included in Plaintiff's RFC.

## VI. CONCLUSION

Based on the foregoing, Plaintiff's Motion for Summary Judgment [**Doc. 16**] will be **DENIED**, and the Commissioner's Motion for Summary Judgment [**Doc. 18**] will be **GRANTED**. The Commissioner's decision will be **AFFIRMED**. The Clerk of Court will be directed to **CLOSE** this case.

ORDER ACCORDINGLY.

_____
Debra C. Poplin
United States Magistrate Judge